UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH MIKELL, | ECF CASE |
| Plaintiff, | Case No. |
| v. | |
| CAPITAL PRINTING SYSTEMS, INC, | COMPLAINT |
| Defendant. | TRIAL BY JURY |

**NATURE OF THE ACTION AND THE PARTIES**

1.     This is an action to redress unlawful employment practices, under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et seq., the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. §290 et seq. and the New York City Human Rights Law, (the "NYCHRL"), N.Y.C. Admin. Code §8 -101 et seq.

2.     The Plaintiff, Mr. Mikell ("Plaintiff" or "Mikell") is an adult with diabetes; accordingly, he is disabled within the meaning of the ADA.

3.     Defendant Capital Printing Systems, Inc. ("Capital" or "Defendant") is business corporation organized under the laws of the State of New York. Their principle place of business is located at 140 East 45th Street, 36th Floor, New York, NY 10017.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 12101 and 28 U.S.C. §§ 1331, 1343 and 1367(a).

5. Venue is proper within the New York Division of the Southern District of New York because all causes of action accrued within New York County, New York.

6. Plaintiff filed a timely charge of discrimination with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"). All pre-suit requirement were met with the issuance of a Notice of Right To Sue Letter was issued by the EEOC.

8. Plaintiff has satisfied all of the statutory prerequisites to filing suit in this Court.

9. Plaintiff seeks an award of appropriate relief.

## FACTS

10. Diabetes is a disease in which the body does not produce or properly use insulin. Insulin is a hormone that is needed to convert sugar, starches and other food into energy needed for daily life. The cause of diabetes continues to be a mystery, although both genetics and environmental factors such as obesity and lack of exercise appear to play roles. There are 20.8 million children and adults in the United States, or 7% of the population, who have diabetes. While an estimated 14.6 million have been diagnosed with diabetes, unfortunately, 6.2 million people (or nearly one-third) are unaware that they have the disease.

*All About Diabetes*, The American Diabetes Assoc., http://www.diabetes.org/about-diabetes.jsp (Oct. 9, 2007).

11. Individuals with diabetes successfully perform all types of jobs from heading major corporations to protecting public safety. Yet, many employers still automatically exclude them from certain positions based on myths, fears, or stereotypes. For example, some employers wrongly assume that anyone with diabetes will be unable to perform a particular job (e.g., one that requires driving) or will need to use a lot of sick leave. The reality is that, because many individuals with diabetes work with few or no restrictions, their employers do not know that they have diabetes. Some employees, however, tell their employers that they have diabetes because they need a "reasonable accommodation" a

change or adjustment in the workplace to better manage and control their condition. *Most of the accommodations requested by employees with diabetes such as regular work schedules, meal breaks, a place to test their blood sugar levels, or a rest area do not cost employers anything to provide.*

*Questions and Answers About Diabetes in the Workplace and the Americans with Disabilities Act (ADA)*, U.S. Equal. Opp. Comm., http://eeoc.gov/facts/diabetes.html (Oct. 9, 2007) (emphasis added).

12. Capital is in the business of providing an assortment of printing services to customers in throughout the City of New York.

13. On June 27, 2005, the plaintiff, commenced working for the defendant.

14. Sometime in the early part of 2006, Mr. Mikell gave notice to Capital that he is suffering from diabetics, however, it should not have an impact on his ability to continue his employment.

15. Capital, by its actions, demonstrated that they agreed with Mr. Mikell that he can continue his employment with Capital.

16. It is or will be undisputed that from June 2006 though August 2007, Don Barlett, President of Capital, employed a workplace consultant on nutrition and exercise to better inform and educate his employees on how to better management their health.

17. The consultant, in an open meeting attended by several managers and supervisors in which Mr. Mikell participated, with Mr. Mikell's approval, openly discussed his diabetic condition.

18. The consultant, with Capital's approval, had approximately five private consultation sessions with Mr. Mikell on how to manage his Diabetes through better nutrition and exercise.

19. During his tenure with the respondent, Mr. Mikell is a Type 2 (deficient insulin production) borderline Type 1 (no insulin production) diabetic. During his tenure with the respondent, Mr. Mikell was prescribed 4 mg of amaryl, an oral diabetes medicine that helps control blood sugar

levels by helping the body respond better to insulin produced by the pancreas, and 1000 mg of Glucophage, a drug to decrease the amount of sugar that the liver produces and to control its absorption in the intestines. The side effects of Glucophage, include but is not limited to, muscle pain or tenderness; unusual drowsiness, dizziness, or lightheaded, slow or irregular heartbeat; fast or difficult breathing; unusual stomach discomfort, or unusual weakness or tiredness.

20. Despite the fact that Capital had notice of Mr. Mikell's diabetic condition, nonetheless, they refused to make a reasonable accommodation for his condition and instead, made overtime beyond a reasonable amount mandatory.

21. Not only did Capital demand that Mr. Mikell work well beyond an eight (8) hour shift, a twelve (12) and sixteen (16) hour shift were also demanded and if Mr. Mikell's failed to comply he would subject to disciplinary actions that would ultimately lead to Capital terminating his employment.

22. Mr. Mikell was also often reprimanded by being absent from his workstation and his excuses, toilet and water breaks that are often required for a person suffering diabetes were rejected as reasonable accommodation.

23. A full workday with no lunch breaks was required and his failure to comply would subject Mr. Mikell to disciplinary actions that would lead ultimately lead to Capital terminating his employment.

24. As noted above a reasonable accommodation for a diabetic would included, but not limited to, meal breaks, a place to test their blood sugar levels, rest, and toilet breaks.

25. During the last week of July 2007, on several occasions, Mr. Mikell meet with his supervisors and they informed him that Capital was going to terminate his employment because of his resistance to work well beyond an eight (8) hour shift and his repeated absence from his work station regardless of his job performance and his request for a reasonable accommodation..

26. Capital's comptroller also meet with Mr. Mikell to reiterate Capital's intent on

terminating his employment because of his resistance to work well beyond an eight (8) hour shift and his repeated absence from his work station regardless of his job performance and his request for a reasonable accommodation

1. Given that his employment was about to be terminated because of Capital's refusal to make a reasonable accommodation under the ADA, on or about August 6, 2007, Mr. Mikell had no choice but to self-terminate his employment so that his employment record would not reflect an involuntary termination that would severely hamper his search for new employment.

## COUNT I
## (ADA)

28. Mr. Mikell repeats and realleges every allegation in paragraphs 1 through 29 of this Complaint with the same force and effect as though fully set forth herein.

29. Capital employs more than 100 employees.

30. At all relevant times, Capital was an "employer" within the meaning of the ADA 42 U.S.C. §12101 et seq

31. At all relevant times, Mr. Mikell was an "employee" within the meaning of "ADA"), 42 U.S.C. §12101 et seq.

32. Capital' conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination in violation of "ADA"), 42 U.S.C. §12101 et seq.

33. Capital' conduct, as alleged herein, was carried out with malice or reckless disregard for Mr. Mikell's protected rights to be free from discrimination.

34. As a result Capital' unlawful conduct, Mr. Mikell has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and

attorneys' fees and costs. Mr. Mikell is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Capital under the ADA.

35.     As a further result of Capital' unlawful conduct, Mr. Mikell has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Mr. Mikell is entitled to recover damages for such injuries from Capital under the ADA.

## COUNT III
## (NYSHRL)

36.     Mr. Mikell repeats and realleges every allegation in paragraphs 1 through 37 of this Complaint with the same force and effect as though fully set forth herein.

37.     At all relevant times, Capital was an "employer" within the meaning of the NYSHRL. N.Y. Exec. Law § 290 et seq.

38.     At all relevant times, Mr. Mikell was an "employee" within the meaning of the NYSHRL and a "person" within the meaning of the NYSHRL.

39.     Capital' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of disability in violation of the NYSHRL.

40.     As a result of Capital' unlawful conduct, Mr. Mikell has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Mr. Mikell is entitled to recover such monetary and other damages, from Capital under the NYSHRL.

41.     As a further result of Capital' unlawful conduct, Mr. Mikell has suffered and continues

to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Mr. Mikell is entitled to recover

damages for such injuries from Capital under the NYSHRL.

### COUNT III
### NYCHRL

42. Mr. Mikell repeats and realleges every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as though fully set forth herein.

43. At all relevant times, Capital was an "employer" within the meaning of the NYCHRL. N.Y.C. Admin. Code §8 -101 et seq.

44. At all relevant times, Mr. Mikell was an "employee" within the meaning of the NYCHRL and a "person" within the meaning of the NYCHRL.

45. Capital' conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of disability in violation of the NYCHRL.

46. As a result of Capital' unlawful conduct, Mr. Mikell has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Mr. Mikell is entitled to recover such monetary and other damages, from Capital under the NYCHRL.

47. As a further result of Capital' unlawful conduct, Mr. Mikell has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Mr. Mikell is entitled to recover

damages for such injuries from Capital under the NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

(A) On Count I, enter a judgment declaring the acts and practices of Capital to be in violation of the ADA.

(B) On Count I, award Plaintiff as against Capital loss wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Capital's unlawful discrimination, unlawful harassment, in accordance with the ADA and other supporting laws.

(C) On Count I, award Plaintiff as against Capital consequential damages for losses resulting from Defendant's unlawful discrimination and unlawful harassment in accordance with the ADA and other supporting laws.

(D) On Count I, award Plaintiff as against Capital compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the ADA and other supporting laws.

(E) On Count I, award Plaintiff as against Capital the cost of this action, together with reasonable attorneys' fees, in accordance with the ADA and other supporting laws.

(F) On Count II, enter a judgment declaring the acts and practices of Capital to be in violation of the NYSHRL.

(G) On Count II, award Plaintiff as against Capital loss wages, including without

limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of said Defendant's unlawful discrimination, unlawful harassment, in accordance with the NYSHRL.

(H) On Count II, award Plaintiff as against Capital consequential damages for losses resulting from Defendant's unlawful discrimination and unlawful harassment in accordance with the NYSHRL.

(I) On Count II, award Plaintiff as against Capital compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the NYSHRL.

(J) On Count II, award Plaintiff as against Capital the cost of this action, together with reasonable attorneys' fees, in accordance with the NYSHRL.

(K) On Count III, enter a judgment declaring the acts and practices of Capital to be in violation of the NYCHRL.

(L) On Count III award Plaintiff as against Capital consequential damages for losses resulting from Capital's unlawful discrimination in accordance with the NYCHRL.

(M) On Count III, award Plaintiff as against Capital compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the NYCHRL.

(N) Grant Plaintiff such other and further relief as may be necessary and proper.

**JURY DEMAND**

Plaintiff demands a jury trial for all issues triable by jury.

Dated: New York, New York

June 18, 2008

                                  LAW OFFICE OF LOCKSLEY O. WADE, LLC
                                  110 Wall Street, 11th Floor
                                  New York, NY 10005
                                  (212) 933-9180
                                  (212) 253-4142 (facsimile)
                                  lwade@lwade-law.com
                                  *Attorney for the plaintiff*

By: _____
      Locksley O. Wade, Esq.